UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR M. VARGAS,<br><br>                    Petitioner,<br><br>        v.<br><br>E.S. ALAMEIDA, JR., et al.,<br><br>                    Respondents. | 1:03-CV-05086 LJO JMD HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in custody at California State Prison, Corcoran pursuant to a judgment of the Superior Court of California, County of Fresno, following his conviction by jury trial on August 18, 1999, of one count of assault with a deadly weapon (Cal. Penal Code § 245(a)(1)). (CT 340-43.) Petitioner received a sentence of 25 years to life for the assault with a deadly weapon charge, enhanced by 3 years for committing the offense for the benefit of a street gang (Cal. Penal Code § 186.22(b)(1)) and by 3 years for inflicting great bodily injury on the victim (Cal. Penal Code § 12022.7(a)). (Id.) Petitioner also received 10 years for two prior felony convictions pursuant to section 667(a) and 3 years for three prior prison terms pursuant to section 667.5(b). (Id.)

1    On August 20, 1999, Petitioner filed a notice of appeal to the California Court of Appeal, Fifth Appellate District (hereinafter "Fifth DCA"). On February 8, 2001, the Fifth DCA struck the section 186.22(b) enhancement, but affirmed the judgment and sentence in all other respects. (Answer, Ex. A.)

On May 16, 2001, the California Supreme Court denied the People's petition for review. (Answer, Ex. C.)

On September 27, 2001, Petitioner filed a petition for writ of habeas corpus with the Superior Court of California, County of Fresno. On October 4, 2001, the court denied the petition in a reasoned opinion. (Answer, Ex. E.)

On October 31, 2001, Petitioner filed a petition for writ of habeas corpus with the Fifth DCA. On November 9, 2001, the court denied the petition. (Petition, Ex. 2.)

On January 16, 2002, Petitioner filed a petition for writ of habeas corpus with the California Supreme Court. On July 10, 2002, the court denied the petition. (Answer, Ex. D.)

On January 21, 2003, Petitioner filed the instant petition in this Court. The petition presents the following four grounds for relief: 1) ineffective assistance of trial counsel; 2) violation of the hearsay rule and confrontation clause based on the testimony of the investigating officer regarding information relayed to him by an unqualified and biased interpreter; 3) Miranda violations; and 4) ineffective assistance of appellate counsel.

On May 12, 2003, Respondent filed an answer to the petition.

On June 5, 2003, Petitioner filed a traverse to the answer.

## FACTUAL BACKGROUND[1]

As of November 1998, there were four validated criminal street gangs in Selma. The gangs were originally denominated as Norteno and Sureno; however, two factions split from the Nortenos. These factions were known as VSR and the Bulldogs. The gang color for the Nortenos, VSR, and the Bulldogs is red; that of the Surenos is blue.

On November 17, 1998, Christopher Q. and Abel D., members of VSR and the Nortenos

---

[1] The facts, unless otherwise noted, are derived from the factual summary set forth by the Fifth DCA in its opinion of February 8, 2001, and are presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1); see Answer, Ex. A.

respectively, were walking on Sylvia Street in Selma.  Juan Soria and Octavio Santos were in front of a house on Sylvia Street with Julio Vega and Ernest Lopez–veterans of the Sureno gang.

After gang-related words and gestures were exchanged, Vega and Lopez chased Christopher and Able southbound on Sylvia Street and eastbound onto Young.  During the chase, Vega held a pencil as a weapon and Lopez held a beer bottle.  Christopher and Able were yelling as they were being chased and several Norteno gang members and Petitioner started towards them.  At that point, Vega ran back to the area of the house on Sylvia Street and Lopez began running back, but stopped when he was hit on the head by a bottle thrown by Christopher.

Petitioner caught up to Lopez and struck him in the eye causing him to fall to the ground.  Petitioner then took out a knife and pursued Lopez into the fenced yard of the house on Sylvia Street.  Santos and Soria were also at the house.  Petitioner cut Santos on the hand as Santos retreated with his arm raised in a defensive position.  Santos also suffered a cut to his chest.  Petitioner then went after Lopez.

Sergeant Myron Wayne Dyck and Officer Grilione were dispatched to the area in separate vehicles.  En route, they saw a man matching the description of Lopez running on Sylvia Street and Petitioner running behind him.  Petitioner was wearing gray sweatpants, but no shirt, and the officers could see several tattoos on Petitioner indicating affiliation with the Bulldog gang.

While Dyck followed Petitioner, Grilione proceeded to the location of the reported disturbance, where he called an ambulance for Santos.  Grilione spoke with Soria and Vega, using Leticia Lopez to translate their statements from Spanish to English, then transported them to Dyck's location. (RT 742-47.)  Soria and Vega identified Petitioner as Santos's assailant.  Petitioner was arrested.  Petitioner had a red bandana in his left front pocket indicating his affiliation with the Bulldog/Norteno gang.  Petitioner also had a "Bulldog" tattoo on his chest and a "Selma" tattoo on his abdomen.

**DISCUSSION**

**I.  Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of

the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* <u>Drinkard v. Johnson</u>, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II.  Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996.  <u>Lockyer v. Andrade</u>,  538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding."  28 U.S.C. § 2254(d); <u>see</u> <u>Lockyer</u>, 538 U.S. at 70-71; <u>see</u> <u>Williams</u>, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" <u>Lockyer</u>, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time

of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).


## III. Review of Petitioner's Claims

### A. Ground One

Petitioner contends that he received ineffective assistance of counsel at trial because his attorney failed to investigate or locate Leticia Lopez, the bilingual interpreter who assisted Officer Grilione at the crime scene. Petitioner also contends that counsel's failure to object to the gang evidence was prejudicial to his case.

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different." Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Id. at 688. The court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at

697. Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. Strickland, 466 U.S. at 692; United States v. Cronic, 466 U.S. 648, 659, and n. 25 (1984). Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

This claim was presented in a petition for writ of habeas corpus to the Superior Court of California, County of Fresno on September 27, 2001 and denied in a reasoned opinion on October 4, 2001. (Answer, Ex. E.) It was then raised in petitions to the Fifth DCA and to the California Supreme Court where it was summarily denied. (Petition, Ex. 2.) The Fifth DCA and California Supreme Court, by their "silent orders" denying the petitions, are presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claim, the Superior Court found that his counsel was not ineffective in failing to object to the testimony relating to the information relayed by the interpreter because, under the theory of agency, it has been held that such bilingual assistance does not qualify as inadmissible hearsay. The court also found that Petitioner's trial counsel was not ineffective in failing to object to the gang evidence, as any prejudice was eliminated when the Fifth DCA ordered the gang enhancement stricken. (Answer, Ex. E.)

The state court's determination regarding the information obtained from the interpreter was not unreasonable. In People v. Torres, the California Court of Appeal held that the hearsay rule generally does not bar a percipient witness from testifying to the content of a statement made through an interpreter. People v. Torres, 213 Cal.App.3d 1248, 1258 (1989); see also Correa v. Superior Court, 27 Cal.4th 444, 457, 463 (2002) (stating that the rule applies to statements made by parties and by non-party witnesses). The Torres court noted, however, that an exception may apply where there is "a substantial possibility that the interpreter had a motive to misrepresent, such as an interest in shifting suspicion to the accused and away from the interpreter, or a lack of capacity or

demonstrated incompetence on the part of the translator." People v. Torres, 213 Cal.App.3d 1248, 1258 (1989).

    Here, even assuming that the interpreter was married to Ernest Lopez, that she was related to Vega, and that she resided with Soria and Santos as alleged by Petitioner, there is no basis to conclude that she had a motive to misrepresent the statements being made by Soria and Vega to Officer Grilione. (See Traverse 2:24-27). There is also no factual basis to conclude that the interpreter lacked the capacity to provide a proper translation. The record shows that Officer Grilione was familiar with Ms. Lopez, that he instructed her on how to conduct the interpretation, and that he did not hear any variations between the Spanish statements and the English translations. (RT 742-45.) As the testimony relating to the interpreter's statements was not hearsay, Petitioner's counsel was not ineffective by failing to object to it. Further, Petitioner has not established that he was prejudiced by his counsel's failure to investigate or locate Ms. Lopez, as Petitioner has not identified how doing either would have caused the result in the case to be different.

    The state court's determination regarding counsel's failure to object to the gang evidence was also not unreasonable. As recognized by the Superior Court in its denial of Petitioner's petition, any prejudice caused by the introduction of the gang evidence was eliminated when the Fifth DCA ordered the section 186.22 enhancement stricken.

**B. Ground Two**

    Petitioner contends that the "the prosecution[']s failure to secure and provide Mrs. Lopez at trial obviously violated the hearsay rule, and the confrontation clause." (Petition at 5.)

    As stated above, the testimony regarding the interpreter's statements was not hearsay. Petitioner's confrontation clause rights were therefore not violated when Ms. Lopez did not testify at trial. See Coy v. Iowa, 487 U.S. 1012, 1017 (1988) ("[T]he Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination.")

**C. Ground Three**

    Petitioner contends that there is no written or recorded evidence that he waived his Miranda rights prior to being questioned and that the trial court erred in denying his motion to suppress.

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444 (1966)

This claim was presented in a petition for writ of habeas corpus to the Superior Court of California, County of Fresno on September 27, 2001. It was denied in a reasoned opinion on October 4, 2001. (Answer, Ex. E.) It was then raised in petitions to the Fifth DCA and to the California Supreme Court where it was summarily denied. (Petition, Ex. 2.) The Fifth DCA and California Supreme Court, by their "silent orders" denying the petitions, are presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claim, the Superior Court found that Petitioner's Miranda rights had not been violated as "his own documentation affirms that [he] was given the Miranda admonition." (Answer, Ex. E.)

The state court's determination was not unreasonable. Detective Wilbanks testified that he provided Miranda warnings to Petitioner during the following exchange:

Q: Following that arrest, did you have an opportunity to interview Victor Vargas?

A: Yes, I did.

Q: Where did that occur?

A: In the jail cell at the Selma Police Department Holding Facility.

Q: Prior to any interview occurring, was Mr. Vargas advised in any way of his Miranda warnings?

A: Yes.

Q: How did that occur?

A: I read them from a Miranda card the City of Selma –

Q: Is that read in a verbatim fashion?

A: Yes.

Q: Did he acknowledge understanding those rights?

A: Yes.

Q: Did he agree to waive those rights?

A: Yes.

Further, Officer Grilione testified that, prior to his interview with Petitioner 30 minutes later, he learned that Detective Wilbanks had read Petitioner the Miranda warnings, that he advised Petitioner that the rights were still applicable, and that Petitioner appeared to be willing to speak with him. (RT 421-22.) The record shows that Petitioner received proper Miranda warnings prior to the interviews. See U.S. v. Malloy, 34 Fed. Appx. 520, 522 (9th Cir. 2002) ("Where successive custodial interrogations after an initial Miranda warning occur, we must consider the totality of the circumstances to determine whether the defendant should have been re-advised of his or her Miranda rights to ensure that the subsequent interrogations are not coerced.")

### D. Ground Four

Petitioner contends that he received ineffective assistance of counsel at the appellate level because counsel failed to raise the issues addressed in this petition.

Effective assistance of appellate counsel is also guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to Strickland 's two-pronged test. See, e.g., Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir. 1986). Therefore, as above, a defendant must show that appellate counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, defendant would have prevailed on appeal. Miller, 882 F.2d at 1434 & n. 9, *citing,* Strickland, 466 U.S. at 688, 694; Birtle, 792 F.2d at 849. However, appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant. Jones v. Barnes, 463 U.S. 745, 751-54 (1983); Miller, 882 F.2d at 1434 n. 10. The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. Miller, 882 F.2d at 1434. As a result, appellate counsel will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason - because he declined to

raise a weak issue. Id.

Here, as discussed above, Petitioner has not established that his trial counsel was ineffective, that Officer Grilione's testimony regarding the information relayed by the interpreter violated his constitutional rights, or that he did not receive proper Miranda warnings.  Petitioner has therefore failed to show a reasonable probability that he would have prevailed on appeal if counsel had raised the issues set forth in this petition.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   June 5, 2008**            /s/ John M. Dixon
UNITED STATES MAGISTRATE JUDGE